UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

ADHESIVES RESEARCH, INC., :
    Plaintiff :
     :
    v. : CIVIL NO. 1:15-CV-0326
     :
     :
SUSAN NEWSOM, :
    Defendant :

*M E M O R A N D U M*

*I.   Introduction*

We are considering a Motion for Preliminary Injunction.  (Doc. 2).  This matter relates to an employment dispute between Adhesives Research, Inc. (Plaintiff) and its former employee, Susan Newsom (Defendant).  Plaintiff alleges that by working for one of its competitors, Defendant breached a covenant not to compete, engaged in unfair competition, and will inevitably misappropriate trade secrets.  (Doc. 1).  On February 13, 2015, Plaintiff filed a Motion for Preliminary Injunction, seeking to enjoin Defendant from working for her current employer and from disclosing confidential information.  (Doc. 2).  For the reasons discussed below, we will deny Plaintiff's motion.

*II.   Background*

Plaintiff is a manufacturer of specialty tape.  (Doc. 1 at 2; Doc. 19 at 21).  It produces rolls of adhesives which it sells as a raw material to other businesses.  (Doc. 19 at 21).  Plaintiff's customers convert the tape into a final product that is sold to consumers in the medical, pharmaceutical, electronics, and industrial markets.  (Id.).  Although based

in Glen Rock, Pennsylvania, Plaintiff maintains facilities in Europe, Asia, and South America, and it sells its products to customers throughout the world.  (Id.).

Between September of 2000 and August of 2014, Defendant was employed by Plaintiff.  Defendant worked for Plaintiff almost exclusively from her home in California. (Doc. 14-1 at 2; Doc. 19 at 42).  She communicated with Plaintiff's headquarters by telephone on a daily basis, and she traveled to Plaintiff's Pennsylvania facility six to eight days a year to attend training and seminars.  (Doc. 1 at 3; Doc. 14 at 2; Doc. 19 at 25, 64).  For the first thirteen years of her employment, Defendant held the position of Medical Marketing Manager.  (Doc. 19 at 22).  In this position, Defendant was responsible for selling the company's products and services to customers in the western half of the United States.  (Doc. 19 at 23).  In 2013, Defendant was promoted to Pharmaceutical Business Manager.  (Doc. 19 at 22).  As business manager, Defendant was responsible for the oversight of Plaintiff's pharmaceutical sales force, and she assisted with the development and execution of Plaintiff's strategic business plan.  (Doc. 19 at 27-28, 62).  In both of Defendant's positions, she had access to Plaintiff's confidential business information, and she had frequent contact with Plaintiff's customers. (Doc. 19 at 23-26).

In January of 2012, intending to protect its confidential information, Plaintiff required all of its employees, including Defendant, to sign a "Confidentiality, Assignment, and Non-Compete Agreement."  (Doc. 19 at 30; Pl. Ex. 3).  The non-compete portion of the agreement provides, in pertinent part, as follows:

> During the period of the Associate's employment by the Company and for a period of two (2) years thereafter, the Associate shall not . . . perform any services similar to the services performed by the Associate during his employment with Company, for . . . any business . . . that develops, manufactures or sells any products that compete in kind with . . . any products manufactured, sold or under development by the Company . . ., in any area of the world in which such products are sold by the Company . . . .

(Pl. Ex. 3 at 4). The agreement provides that it "shall be construed and enforced in accordance with the law of the Commonwealth of Pennsylvania, without regard to conflicts of law principles of Pennsylvania or any other jurisdiction." (Pl. Ex. 3 at 6) (hereinafter "choice of law clause"). Additionally, the agreement selects the forum where any legal proceeding related to agreement must be initiated:

> Any legal proceeding arising out of or relating to this Agreement shall be instituted in the United States District Court for the Middle District of Pennsylvania, or if such court does not have or will not accept jurisdiction, in any court of general jurisdiction in York County, Pennsylvania, and the Associate hereby consents to the personal and exclusive jurisdiction of such court and hereby waives any objection that the Associate may have to the laying of venue of any such proceeding and any claim or defense of inconvenient forum.

(Pl. Ex. 3 at 15-16) (hereinafter "forum selection clause"). Believing that the terms were not negotiable, Defendant signed the agreement on January 31, 2012. (Doc. 14-1 at 2).

On August 15, 2014, Defendant terminated her employment with Plaintiff. (Doc. 14-1 at 2). In January 2015, she was hired by Scapa Tapes North America, LLC (Scapa) as a Senior Strategic Sales Executive for the western United States. (Doc. 19 at 55). Scapa is a "manufacturer of bonding products and adhesive components." (Doc. 19 at 35; Pl. Ex. 5 at 1). Primarily, Scapa converts its adhesives into a final product to

be used by consumers in the electronic, healthcare, industrial, and automotive markets. (Doc. 19 at 45-47; Def. Ex. 1).  By letter dated February 4, 2015, Defendant notified Plaintiff of her employment with Scapa.  (Doc. 1 at 6; Pl. Ex. 7).

On February 13, 2015, believing that Defendant's employment with Scapa violates the non-compete agreement, Plaintiff filed a complaint alleging common law claims of breach of contract and unfair competition, as well as a statutory claim under the Pennsylvania Uniform Trade Secrets Act.  (Doc. 1).  On the same date, Plaintiff filed a Motion for Temporary Restraining Order and/or Preliminary Injunction.  (Doc. 2).  On February 18, 2015, we issued a temporary restraining order, enjoining Defendant from working for Scapa for a period of ten days.  (Doc. 7).  On February 26, 2015, we held an evidentiary hearing on the Motion for Preliminary Injunction.  At the conclusion of the hearing, we vacated the temporary restraining order, allowing Defendant to return to work, and we instructed the parties to submit post-hearing briefing on the Motion for Preliminary Injunction within fifteen days from the date the transcript became available.  (Doc. 19 at 79-80).  The matter, now being fully briefed, is ripe for our consideration.

III.        *Discussion*

   *A. Personal Jurisdiction*

As a threshold matter, the parties dispute whether we enjoy personal jurisdiction over Defendant.  Plaintiff argues that Defendant has sufficient minimum contacts with Pennsylvania such that we can exercise general jurisdiction.  Alternatively, Plaintiff asserts that Defendant has waived any personal jurisdiction defense by agreeing

to the forum selection clause contained in the non-compete agreement.  Conversely, Defendant argues that her contacts with Pennsylvania are insufficient to establish general jurisdiction and the forum selection clause is unenforceable.[1]

### *1. General Jurisdiction*

When a federal court is sitting in diversity, "[t]he Due Process Clause of the Fourteenth Amendment sets out the outer boundaries of [the court's] authority to proceed against a defendant."[2]  Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. __, 131 S. Ct. 2846, 2853 (2011).  Under the Due Process Clause, a tribunal has jurisdiction over a defendant so long as the defendant has "certain minimum contacts with [the forum] such that the maintenance of suit does not offend traditional notions of fair play and substantial justice."  Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).  Only when a foreign defendant has continuous and systematic contacts that "are so constant and pervasive as to render him essentially at home in the forum State," does a tribunal within the forum enjoy general jurisdiction over the defendant, allowing the court to hear any and all claims against the defendant.  Daimler AG v. Bauman, 134 S.

---

1. The plaintiff bears the burden of establishing a court's personal jurisdiction over the defendant. Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93 (3d Cir. 2004).  Although we "must accept all of the allegations in the complaint as true and construe disputed facts in favor of the plaintiff," Pinker v. Roche Holdings Ltd., 292 F.3d 361, 368 (3d Cir. 2002), once a jurisdictional defense is raised, the plaintiff must prove, through affidavits or other competent evidence, that the forum state has personal jurisdiction over the defendant. Dayhoff, Inc. v. H.J. Heinz Co., 86 F.3d 1287, 1302 (3d Cir. 1996).

2. Federal district courts have personal jurisdiction over defendants to the same extent as a state court of general jurisdiction where the district court sits.  FED. R. CIV. P. 4(k)(1)(A).  In Pennsylvania, courts of general jurisdiction enjoy personal jurisdiction to the "fullest extent allowed under the Constitution of the United States."  42 PA. CONS. STAT. § 5322(b).  Accordingly, our jurisdiction extends to the limit of the Due Process Clause of the Fourteenth Amendment.

Ct. 746, 751 (2014) (quoting Goodyear, 131 S. Ct. at 2851)). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." Daimler, 134 S. Ct. at 760.

Here, Defendant's contacts with Pennsylvania cannot satisfy this demanding standard. During Defendant's fourteen year employment with Plaintiff, she traveled to Pennsylvania six to eight days a year and had daily telephone contact with Plaintiff's headquarters. (Doc. 24 at 4). Assuming *arguendo* that these contacts with Pennsylvania can be characterized as continuous and systematic, a contention that we doubt, Defendant's contacts fall far short of being so constant and pervasive as to place her in the same category as those who are domiciled in Pennsylvania. See Daimler, 134 S. Ct. at 751, 760. Accordingly, we find that Defendant's contacts with Pennsylvania do not confer us with general jurisdiction.[3]

*2. Waiver of Personal Jurisdiction*

"Because the requirement of personal jurisdiction represents . . . an individual right, it can, like other such rights, be waived." Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694 (1982). Via a forum selection clause, "parties to a contract may [waive personal jurisdiction and] agree in advance to submit to

---

3. Citing various Third Circuit opinions, Plaintiff argues that we have personal jurisdiction because Defendant has availed herself of sufficient minimum contacts with Pennsylvania. (Doc. 24 at 5). The cases, as well as the concept of purposeful availment, relate to specific jurisdiction. Before a court can exercise specific jurisdiction, the claim must be related to the defendant's contacts with the forum state, and the defendant must have purposefully availed themselves of that contact. Despite having the burden of establishing personal jurisdiction, we find no mention in Plaintiff's brief of specific jurisdiction. Because Plaintiff fails to raise it, we decline to analyze the existence of specific jurisdiction.

the jurisdiction of a given court." Nat'l Equip. Rental, Ltd. v. Szukhent, 375 U.S. 311 (1964). Under federal law,[4] forum selection clauses "are prima facie valid and should be enforced[,]" unless the party resisting the clause makes a strong showing that enforcement would be unreasonable under the circumstances. M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972); Foster v. Chesapeake Ins. Co., 933 F.2d 1207,1219 (3d Cir. 1991). As the party resisting the forum selection clause in this case, Defendant makes two arguments concerning its enforcement.

First, Defendant asserts that the forum selection clause in this case does not actually waive personal jurisdiction. (Doc. 14 at 6). Defendant emphasizes the first half of the forum selection clause: "Any legal proceeding arising out of or relating to this Agreement shall be instituted in the United States District Court for the Middle District of Pennsylvania, <u>or if such court does not have jurisdiction or will not accept jurisdiction</u>, in any court of general jurisdiction in York County, Pennsylvania . . . ." (Pl. Ex. 3 at 6-7) (emphasis added). According to Defendant, the emphasized language indicates that an action related to the agreement may be brought in this Court only if we already have personal jurisdiction. (Doc. 14 at 6). We disagree.

It is a well-established rule of contract construction that a contract must be read, if possible, so that all provisions are given effect. Ludwig Honold Mfg. Co. v. Fletcher, 405 F.2d 1123, 1131 (3d Cir. 1969). Defendant's interpretation, that the

---

4. "Because questions of venue and the enforcement of forum selection clauses are essentially procedural, rather than substantive, in nature, federal law applies in diversity cases irrespective of Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938)." Jumara v. State Farm Ins. Co., 55 F.3d 873, 877 (3d Cir. 1995).

emphasized language refers to <u>personal</u> jurisdiction, violates this canon of construction. All tribunals in Pennsylvania, whether federal or state, have the same personal jurisdiction over foreign defendants.[5] So if we read the emphasized language as saying that when this Court does not have <u>personal</u> jurisdiction, any legal proceeding must be filed in state court, the provision would be ineffectual – if we do not have personal jurisdiction over a defendant, neither would a state court of general jurisdiction in York County.

      As we read it, the emphasized language speaks to subject matter jurisdiction. That is, if this Court does not have federal question or diversity jurisdiction over a legal proceeding arising out of the agreement, the proceeding must be brought in a court of general jurisdiction in York County. This interpretation not only makes the language effective, but unlike Defendant's interpretation, it is consistent with the remainder of the forum selection clause. The remainder of the clause states that "the Associate hereby consents to the personal and exclusive jurisdiction of such court and hereby waives any objection that the Associate may have . . . ." (Pl. Ex. 3 at 7). Because we interpret the language emphasized by Defendant as speaking to subject matter jurisdiction, and because the remainder of the clause unambiguously consents to

---

5. <u>See</u> <u>supra</u> note 2 (explaining that when sitting in diversity, federal courts in Pennsylvania, like state courts, are bound by the requirements of the Fourteenth Amendment); <u>see also</u> <u>Max Daetwyler Corp. v. Meyer</u>, 762 F.2d 290 (3d Cir. 1985) (recognizing that in federal question cases federal courts are bound by the Due Process Clause of the Fifth Amendment, but the analysis is the same "minimum contact" standard that state courts use under the Fourteenth Amendment).

this Court's personal jurisdiction over Defendant, we find that the forum selection clause does waive any personal jurisdiction defense.

Next, Defendant argues that it would be unreasonable to enforce the forum selection clause because the non-compete agreement was the product of overreach. (Doc. 14 at 6-7). To support her argument, Defendant points to our opinion in Dentsply Intern., Inc. v. Benton. In Dentsply, we held that forum selection clauses in employment agreements should generally not be enforced. Dentsply Int'l, Inc. v. Benton, 965 F. Supp. 574, 579 (M.D. Pa. 1997) (Caldwell, J.). We reasoned that the employer-employee relationship is inherently unequal because employees have such an overwhelming interest in preserving their employment. Id. According to Defendant, the same is true here: she had such an interest in preserving her job that the agreement was a product of overreach. Therefore, the forum selection clause should not be enforced. (Doc. 14 at 7). Again, we disagree.

Under federal law, enforcement of a forum selection clause is unreasonable if the clause itself, not the contract as a whole, is the product of overreach. See Bremen, 407 U.S. at 15.[6] Overreach exists when there is (1) overwhelming bargaining power or influence over the other party, and (2) the exploitation of that power to induce assent. Rivera v. Centro Medico de Turabo, Inc., 575 F.3d 10, 21 (1st Cir.

---

6. See also Scherk v. Alberto-Culver Co., 417 U.S. 506, 519 n.14 (1974) (stating that forum selection clause is enforceable unless the clause itself is a product of fraud); Moneygram Payment Sys., Inc. v. Consorcio Oriental, S.A., 65 F. App'x 844, 847 (3d Cir. 2003); accord Marra v. Papandreou, 216 F.3d 1119, 1123 (D.C. Cir. 2000) (stating a forum selection clause is not just a contractual provision, but a separate and distinct contract).

2009).  Here, the evidence produced by Defendant only addresses Plaintiff's superior bargaining position in negotiating the agreement as a whole.  We find no evidence addressing the exploitation of Plaintiff's bargaining position in order to induce Defendant's assent to the forum selection clause itself.

Moreover, while Defendant is quite right to cite our opinion in Dentsply, we find that our holding strayed from the rules governing overreach.  First, although we recognized that there must be evidence that the forum selection clause itself was a product of overreach, we examined the employer's bargaining power in negotiating the agreement as a whole.  Dentsply, 965 F. Supp. at 579.  Second, instead of looking for both disproportionate bargaining power and the exploitation of that power, we looked only for evidence of an inherently unequal bargaining position.  Id.  As a result, our Dentsply opinion is inconsistent with the body of law developed by our sister courts, and we decline to extend it in this case.  See, e.g., DePuy Synthes Sales, Inc. v. Edwards, 23 F. Supp. 3d 472 (E.D. Pa. 2014); United Rentals, Inc. v. Pruett, 296 F. Supp. 2d 220 (D. Conn. 2003);  BABN Tech. Corp. v. Bruno, 25 F. Supp. 2d 593 (E.D. Pa. 1998).

Based on the foregoing, we find that Defendant has failed to make a "strong showing" that enforcement of the forum selection clause in this case is unreasonable.  Accordingly, we find that Defendant has consented to our jurisdiction.

*B. Preliminary Injunction*

A district court will only grant a preliminary injunction if the moving party produces evidence sufficient to convince the court that: (1) there is a likelihood of

success on the merits; (2) he or she will suffer irreparable harm if the injunction is denied; (3) granting relief will not result in even greater harm to the nonmoving party; and (4) the public interest favors such relief.  Bimbo Bakeries USA, Inc. v. Botticella, 613 F.3d 102 (3d. Cir. 2010); ECRI v. McGraw-Hill, Inc., 809 F.2d 223, 226 (3d Cir. 1987).  We address each element in turn and find that none favor Plaintiff.

*1. Likelihood of Success on the Merits*

At the outset, the parties dispute which law applies to the merits of Plaintiff's claims.  Plaintiff argues that the choice of law clause in the agreement dictates that Pennsylvania law governs.  (Doc. 24 at 9-13).  Defendant asserts, however, that under Pennsylvania's conflicts of law analysis, we should ignore the choice of law provision and apply California law.  (Doc. 14 at 7-11).  Because we find that Plaintiff is not likely to prevail under the law of either state, we need not resolve this dispute.

Pursuant to Section 16600 of the California Business and Professions Code, unless it falls within a statutory exception, "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." CAL. BUS. & PROF. CODE § 16600.  Interpreting Section 16600, the Supreme Court of California has declared that "covenants not to compete are void" in California, unless there is an exception.  Edwards v. Arthur Anderson, LLP, 189 P.3d 285, 290 (Cal. 2008).  Plaintiff does not assert that any statutory exceptions to Section 16600 apply in this case.  Accordingly, we find that under California law, Plaintiff has no likelihood of success on the merits.

Under Pennsylvania law, covenants not to compete are enforceable if they are (1) incident to an employment relationship between the parties, (2) reasonably necessary for the protection of the employer, (3) supported by consideration, and (4) reasonably limited in duration and geographic extent.  Hess v. Gebhard & Co., Inc., 808 A.2d 912, 917 (Pa. 2002); Wainwright's Travel Serv., Inc. v. Schmolk, 500 A.2d 476, 478 (Pa. Super. Ct. 1985).  Defendant argues that the non-compete agreement in this case cannot be enforced because the geographic scope of the restriction is not reasonably limited.  (Doc. 14 at 13).  We agree.

The geographic scope of a non-compete agreement is reasonably limited if it encompasses only such territory "as may be reasonably necessary for the protection of the employer without imposing undue hardship on the employee."  Jacobson & Co. v. Int'l Environ. Corp., 235 A.2d 612, 620 (Pa. 1967).  This test is satisfied if the geographic restriction, even if broad in extent, is "roughly consonant with the scope of the employee's duties."  Victaulic Co. v. Tieman, 499 F.3d 227, 237 (3d Cir. 2007).  For example, in the context sales representatives, the Supreme Court of Pennsylvania has held that in order for a non-compete agreement to be reasonably limited, the geographic restriction can extend no farther than the employee's sales territory and customer base. Boldt Mach. & Tools, Inc. v. Wallace, 366 A.2d 902, 909 (Pa. 1976).

Here, despite Defendant's sale's territory consisting of the western half of the United States, the geographic restriction contained in the non-compete agreement extends to anywhere in the world where Plaintiff's products are sold.  (Pl. Ex. 3 at 4).

Because the breadth of the restriction is much larger than Defendant's sales territory, the restriction is not "roughly consonant" with Defendant's duties.  Therefore, we find that the geographic scope is not limited to an area reasonably necessary to protect Plaintiff's interests.  See Boldt, 366 A.2d at 909.  Moreover, by prohibiting Defendant from engaging in her profession anywhere in the world where Plaintiff's products are sold, the restriction imposes a severe hardship on Defendant.  Accordingly, we find that the geographic extent of the agreement is unreasonably broad.

Our finding of an overly broad geographic scope is not the end of our inquiry.  Under Pennsylvania law, courts may exercise their equitable power to narrow an overly broad restriction.  Sidco Paper Co. v. Aaron, 351 A.2d 250, 254 (Pa. 1976).  If we exercised that power and tailored the geographic scope to a reasonable territory, Plaintiff might prevail on the merits.  This case, however, falls within the one exception when the use of equitable powers to modify a restrictive covenant is not permitted.

When a covenant not to compete contains an unlimited geographic scope, although the nature of the business was such that a relevant geographical area could have been specified, the agreement is void, and courts may not use their equitable power to alter the agreement.  Reading Aviation Serv., Inc. v. Bertolet, 311 A.2d 628 (Pa. 1973).  The Supreme Court of Pennsylvania has instructed that such overbreadth "militates against enforcement because it indicates an intent to oppress the employee and/or to foster a monopoly, either of which is an illegitimate purpose.  An employer who

13

extracts a covenant in furtherance of such purpose comes to the court . . . with unclean hands and is . . . not entitled to equitable enforcement . . . ." Sidco, 351 A.2d at 257.

Here, at the time the parties entered into the contract, Plaintiff knew that Defendant's sales territory would consist of the western half of the United States. (Doc. 19 at 42). Despite this knowledge, the restrictions in the non-compete agreement are unlimited in geographic scope – they extend to the entire world. Therefore, the non-compete agreement provision is void under Pennsylvania law and not subject to equitable tailoring.[7] Accord Fres-Co Sys. USA, Inc. v. Bodell, No. 05-3349, 2005 WL 3071755 at *8 (E.D. Pa. Nov. 15, 2005). Because the geographic extent is unreasonably broad and not susceptible to equitable modification, we find that Plaintiff is not likely to prevail under Pennsylvania law.[8]

### 2. Irreparable Harm to Plaintiff if Injunction is Denied

Irreparable harm exists when the injury is "of a peculiar nature, so that compensation in money damages cannot atone for it." Goadby v. Phila. Elec. Co., 639 F.2d 117, 121 (3d Cir. 1981) (stating that irreparable harm only exists when "damages

---

7. Defendant makes two other arguments in an attempt to show that Plaintiff would not prevail on the merits. First, she argues that the agreement is not enforceable because it is unsupported by consideration. Because we find that Plaintiff will not likely prevail on overbreadth grounds, we decline to address this argument. Second, she asserts that even if the agreement is enforceable, there is no breach because her current employer, Scapa, is not a competitor of Plaintiff's. We do not address whether Scapa falls within the prohibitive language of the agreement, but we do address the level of true competition in our discussion of irreparable harm.

8. In the absence of an enforceable restrictive covenant, a former employee may still be liable for the disclosure of confidential or proprietary information if the Plaintiff can establish a misappropriation of trade secrets under Pennsylvania law. Although such a claim is included in its complaint, Plaintiff makes no argument in its brief that it is likely to succeed on the merits of that claim. We therefore decline to address it.

are difficult to ascertain or are inadequate"). The mere risk of irreparable injury is not enough to satisfy this standard. ECRI, 809 F.2d at 226. The moving party must make a clear showing of imminent irreparable harm or a presently existing actual threat of irreparable harm. Acierno v. New Castle Cnty., 40 F.3d 645, 655 (3d Cir. 1994). Plaintiff asserts that if we refuse to enjoin Defendant from working for Scapa, it will suffer irreparable harm in two respects: the solicitation of its customers and the disclosure of its confidential information. We disagree.

   First, despite Plaintiff's arguments to the contrary, this court has held that the loss of customers due to solicitation by a former employee is not a harm that is irreparable. Mettler-Toledo, Inc. v. Acker, 908 F. Supp. 240, 248 (M.D. Pa. 1995). "What is at stake is the possibility that customers will shift their business from [Plaintiff to Scapa] during the pendency of this action. If that occurs . . ., damages can be readily ascertained by reviewing the customer lists and receivables . . . [to] determine which customers shifted their business . . . during the interim period." Id. Accordingly, we find that any solicitation of customers by Defendant will not cause Plaintiff irreparable harm.

   Second, although this court has recognized the disclosure of confidential information as an irreparable harm, Defendant's employment with Scapa does not create a substantial threat or sufficient likelihood that confidential information will be disclosed. See Bimbo Bakeries, 613 F.3d at 110-11 (stating proper rule for preliminary injuctions involving confidential information). We reach this conclusion by finding no evidence of actual competition between Plaintiff and Scapa. Plaintiff's entire business is the

15

production and sale of adhesive rolls to be used in final products. (Doc. 19 at 21). Conversely, the sale of adhesives rolls is not part of Scapa's business strategy. (Doc. 19 at 69). Scapa primarily produces final products. (Doc. 19 at 45-47). Although the evidence suggests that Scapa does produce adhesives in roll form, Plaintiff has produced no evidence to establish that Scapa actually sells any of its rolls of adhesive or truly competes in any other way with Plaintiff.[9] (Doc. 19 at 49-50). Because Plaintiff has not produce evidence of actual competition, we find that Defendant's employment with Scapa does not cause a substantial threat or sufficient likelihood that confidential information will be disclosed.

### 3. Potential of Even Greater Harm to Defendant

An injunction in this case would prohibit Defendant from working for Scapa. As recognized by the Third Circuit, an "injunction prohibiting someone from pursuing his livelihood in the manner he chooses operates as a severe restriction . . . ." Bimbo Bakeries, 613 F.3d at 119. Plaintiff asserts that even though Defendant would not be able to work for Scapa, she would be capable of pursing her livelihood. According to Plaintiff, Defendant could work for any company in her chosen field, so long as it is not a competitor of Plaintiff's. We find that easier said than done. Any prudent employer in

---

9. Plaintiff argues that pursuant to the plain language of the agreement, Scapa is a competitor. The agreement prohibits Defendant from working for any company that manufactures or produces any product similar in kind to Plaintiff's. Plaintiff's argument speaks to the merits of its breach claim. That is, whether Defendant violated the agreement by working for Scapa. The language does not address irreparable harm. Meaning, it has no bearing on whether Scapa and Plaintiff engage in true competition such that there is a substantial threat or sufficient likelihood that confidential information will be disclosed.

Defendant's chosen field, uncertain whether she will be subject to yet another injunction and uncertain whether she will ultimately return to Scapa at the conclusion of this case, would likely forgo hiring her.  Accordingly, we find that an injunction in this case would cause a severe restriction to Defendant's pursuit of a livelihood.  On balance, we find that this harm would be greater than the harm to Plaintiff.

### 4. Public Interest

Finally, this case involves dueling public interests.  As recognized by Plaintiff, there is a public interest in "upholding the inviolability of trade secrets and enforceability of confidentiality agreements."  See Bimbo Bakeries, 613 F.3d at 119.  On the other hand, there is an important public interest in the right of an employee to be free to work for whom they please.  Id.  Because our discussion above reveals that there is no substantial threat or sufficient likelihood that Defendant will disclose trade secrets or confidential information, we find that, in this case, the public interest weighs against ordering a preliminary injunction.

### IV.    Conclusion

For the reasons discussed above, we find that Plaintiff has failed to produce sufficient evidence to convince us that a preliminary injunction is warranted.  We will issue an appropriate order.

/s/William W. Caldwell  
William W. Caldwell  
United States District Judge